UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:98-CT-691-F(3)

| | |
|---|---|
| JELANI HUSANI SIMBA, ) | |
| CARL GENE BALLARD, and ) | |
| NATHAN PHILLIPS, JR., ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | O R D E R |
| ) | |
| JAMES BAXTER HUNT, JR., *et al.*, ) | |
| Defendants. ) | |

This matter is before the court for consideration of the Magistrate Judge's Memorandum and Recommendation ("M&R") filed September 2, 2003. Plaintiff Jelani Husani Simba ("Simba"), proceeding *pro se*, has filed timely objections to the M&R, and the matter is ripe for disposition.

In the M&R, Magistrate Judge William A. Webb recommends that each of the Defendants' pending motions for summary judgment be allowed, and that the other various pending motions be denied as moot. Specifically, Judge Webb recommends that Simba's claim for excessive force against Defendants Daniel Lewis and Julie Morse be dismissed because Simba failed to proffer evidence suggesting that he had suffered more than *de minimis* injuries incurred during a confrontation with the Defendants. *See* M&R [DE-156] at p. 7. Judge Webb also recommends that Simba's claim against Defendant Rivenbark for deliberate indifference to serious medical needs be dismissed because (1) Simba fails to establish that he had an objectively serious medical need; (2) Simba fails to establish that Defendant Rivenbark was deliberately indifferent to that need, and (3) Simba did not assert that he suffered any injury resulting in delay from "medical treatment." *Id.* at pp. 9-10. Judge Webb also recommends that Simba's claim for

violation of First Amendment rights against Defendant Futrell be dismissed, along with all the Plaintiffs' claims against various North Carolina Department of Corrections ("NCDOC") officials. Simba filed several objections to the proposed findings and recommendations.[1] The court will address Judge Webb's recommendations, and Simba's objections thereto, *seriatim*.

## A. General objections

Simba sets forth a number of general objections to the M&R. First, he objects to Judge Webb's decision to only consider the first thirty pages of his response to the various motions for summary judgment and to allow the motion to strike [DE-143] and exclude Exhibits 1-3, 5-17, 20-46, 48-80 in issuing the M&R. With regard to Judge Webb's decision on the motion to strike, the court finds it to be correct and in accordance with the law and consequently finds Simba's objection to be without merit. The court, however, agrees with Simba that his entire response to the various motions for summary judgment should be considered, not just the first thirty pages. Although Judge Webb is correct in noting that the Local Civil Rules mandate that all supporting memoranda be concise and no longer than thirty pages in length, the undersigned is cognizant that Simba was responding to four separate motions within one response. Although the better course would have been to ask for leave to file a response that exceeds the allowed page limitations, the court will take Simba's *pro se* status into account, and therefore has considered all sixty-one pages of his response.

## B. Excessive Force Claims

Simba does not appear to have any objection to Judge Webb's recommendation that his

---

[1] Plaintiffs Carl Gene Ballard and Nathan Phillips, Jr., did not file responses to the motions for summary judgment, nor did they file any objections to the M&R.

claim for excessive force against Defendants Lewis and Morse be dismissed for failure to proffer sufficient evidence to establish that he suffered more than *de minimis* injury. Rather, Simba appears to only object to Judge Webb's observation, in a footnote, that the court lacks jurisdiction over Morse because she has not been served. Assuming *arguendo* that Simba's objection has merit, it does not change the fact that he has failed to proffer evidence suggesting that he suffered more than *de minimis* injuries. The court finds Judge Webb's recommendation as to Simba's excessive force claims to be correct and in accordance with the law.

## C. Deliberate Indifference to Serious Medical Needs

Simba alleges that "Defendant Roland Rivenbark"[2] showed deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment protects prisoners from cruel and unusual conditions of confinement. *See Rhodes v. Chapmen*, 452 U.S. 337. A prison official violates an inmate's Eighth Amendment rights when he is deliberately indifferent to a prisoner's serious medical needs, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), or to conditions that pose a substantial risk of serious harm. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). In order to establish an Eighth Amendment claim, a plaintiff most show (1) that "the deprivation of [a] basic human need was *objectively* sufficiently serious,' " and (2) that "*subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.' " *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993) (second alteration in original) (quoting *Wilson v.*

---

[2] Simba named both "R. Rivenbark" and "R.R. Rivenbark" as Defendants. According to the parties, the United States Marshal effected service upon Ricky Rivenbark, but not Roland Rivenbark, the person Simba now contends failed to return his pillow. Consequently, there is some dispute as to whether the court has personal jurisdiction over Roland Rivenbark. In any event, as the court will explain, any claim that Simba has against Roland Rivenbark with regard to the pillow fails.

3

*Seiter*, 501 U.S. 294, 298 (1991)). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions,' *Strickler*, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (citation in original). "The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. . . . [which] requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Id.*

In this case, Simba contends that Defendant Rivenbark took Simba's "medically approved" pillow from his bunk during the first shift, and refused to return it. Simba also contends that he complained to Rivenbark's superior, Sergeant Corbett-Moore, and despite her assurances, the pillow was not returned to him until he asked a third-shift corrections officer later that evening to return the pillow. Judge Webb recommends that this claim be dismissed because Simba had not established that he had a serious medical need, in that the pillow was not "prescribed" for a condition, but rather that Simba was "permitted" to have a second pillow. Judge Webb also notes that Simba makes no showing that Defendant Rivenbark was aware of Simba's alleged need for the pillow, and thereby cannot establish the second subjective component of deliberate indifference. Finally, Judge Webb notes that the pillow was returned to Simba within a few hours.

Simba objects to the recommendation, arguing first that "medically approved" and

"medically necessary" are essentially the same thing. Simba also references two "medical notification slips" issued in 1994 and 1996, stating that Simba is to have an extra pillow. *See* Pl.'s Exs. 85 & 86 [DE-135]. Simba also objects to Judge Webb's finding that Defendant Rivenbark had no knowledge of Simba's need for the pillow. According to Simba, "the pillow was observed" by Rivenbark. Obj. to M&R [DE-157] at ¶ 10.

The court agrees with the M&R. First, the court concludes that, even assuming the pillow was "medically prescribed," the deprivation of the pillow on one occasion for a period of a few hours during the day does not amount to a deprivation of constitutional proportions. *See, e.g., Funchess v. John Doe #1*, No. 96 C 4767, 1999 WL 12785 at * 3 (N.D. Ill. Jan. 10, 1997)(concluding that deprivation of medically-prescribed cane, although "an annoyance," does not amount to a deprivation of constitutional proportions). *Cf. Rosales v. Coughlin*, 10 F.Supp.2d 261, 270, (W.D.N.Y. 1998)(denying motion for summary judgment where evidence suggested that defendants repeatedly confiscated plaintiff's medically prescribed cane for days at a time, causing the plaintiff to fall and sustain a concussion). Second, Simba has not proffered any evidence showing that Rivenbark knew that the pillow was "medically prescribed" and thus cannot prove that Rivenbark was "deliberately indifferent" to his serious medical needs. Consequently, summary judgment is appropriate as to this claim.

### D. First Amendment Claims

#### 1. Denial of Book Request

Simba asserts a claim under § 1983 based on Defendant Ranny Futrell's denial of Simba's request to receive three paperbooks in the mail. Simba contends that Futrell's denial violated his First Amendment rights because it was based both on Simba's failure to use his

5

original name of commitment, Joseph Shaw, as well as the fact that an outside person was paying for the requested books.

In the M&R, Judge Webb finds that Defendant Futrell did not deny Simba's request on the basis of his use of his changed name, but because Simba did not include all the needed information in his request. Judge Webb also finds that Simba did eventually receive the books. Judge Webb did not address Simba's contentions regarding the source of payment of the books. The M&R recommends that Simba's First Amendment claim be dismissed because "[d]elays that are the product of prison regulations reasonably related to legitimate penological interests are not of constitutional significance, even when they result in actual injury." M&R [DE-156] at p. 14 (citing *Lewis v. Casey*, 518 U.S. 343, 361-362 (1996)). Simba contests many of the proposed factual findings in the M&R.[3]

To the extent that Simba's claim is based on his allegation that his request was denied because he failed to use his committed name, the court agrees that summary judgment is appropriate, albeit for a different reason than is stated in the M&R. As this court has previously concluded, inmates constitutionally may be required to provide both their committed name and their religious names to access prison services. *See Thacker v. Dixon*, 784 F.Supp. 286, 299 n.18(E.D.N.C. 1991), *aff'd* 953 F.2d 639 (4th Cir. 1992); *Akbar v. Director of North Carolina Prisons, et al.*, 5:98-CT-361-F3 (March 27, 2002), *aff'd* 50 F.2d. Appx. 151 (4th Cir. 2002).

To the extent that Simba's First Amendment claim is based upon his allegations that the request was denied because an outside person was paying for the books, the court concludes that

---

[3] The court itself is concerned about the apparent inconsistencies between Plaintiff's Exhibits 92 and 94 [DE-135] and Exhibits E and H attached to Defendant Futrell's Affidavit [DE-104].

6

claim cannot succeed for an even more fundamental reason: Simba has not exhausted his administrative remedy with regard to the claim. The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. *See* 42 U.S.C. § 1997e(a). In *Booth v. Churner*, 532 U.S. 731, 741 (2001), the Supreme Court concluded that the PLRA requires a prisoner to exhaust his administrative remedies, even if the relief requested is not available under the administrative process. Moreover, the exhaustion requirement applies to all inmate lawsuits challenging prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Defendant Futrell avers that Simba did not file a grievance regarding the denial of his book request. *See* Aff. of Randy Futrell ¶ 9. Simba, for his part, responds that he "is unable to ascertain the truthfulness or untruthfulness of this defense." Resp. to Mots. for Summ. J. [DE-135] at p. 62. He does not, however, come forward with any evidence indicating that he has exhausted his administrative remedies with regard to this claim. Consequently, his First Amendment claim based on the denial of his book request because of outside payment is DISMISSED without prejudice for failure to exhaust administrative remedies.

### 2. Denial of other services

Simba also alleges that Defendant Cathy Dixon violated his First Amendment rights by failing to recognize a grievance he filed using only his new name. It appears from the record that service has not yet been effected upon Defendant Dixon. Even assuming that service had been effected upon Dixon, the court still concludes that summary judgment is appropriate as to Simba's claim. As this court has previously concluded, inmates constitutionally may be required to provide both their committed name and their religious names to access prison services. *See*

*Thacker v. Dixon*, 784 F.Supp. 286, 299 n.18(E.D.N.C. 1991), *aff'd* 953 F.2d 639 (4th Cir. 1992); *Akbar v. Director of North Carolina Prisons, et al.*, 5:98-CT-361-F3 (March 27, 2002), *aff'd* 50 F.2d. Appx. 151 (4th Cir. 2002).

**D. Eighth Amendment environmental tobacco smoke claims**

Simba also contends that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment because various Defendants were deliberately indifferent to a substantial risk of serious future harm to Simba from being exposed to environmental tobacco smoke ("ETS").[4] As this court observed in a July 12, 1999, Order, Simba's claim rests upon allegations concerning:

> the failure of prison administrators and correctional staff to enforce policies prohibiting smoking in certain designated areas (such as sleeping quarters and bathrooms); the decision of the staff to bolt windows shut thereby preventing fresh air to enter; the inadequacy of the ventilation system; and the refusal of certain members of the correctional staff to use the ventilation system to clear out smoke.

July 12, 1999 Order [DE-17] at p. 8.

To establish an Eighth Amendment claim based on a substantial risk of serious future harm from exposure to ETS, a plaintiff must prove both objective and subjective components. The objective component requires the plaintiff to prove that he himself was exposed to "unreasonably high levels of ETS," and that the risk he complains of is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling*, 509

---

[4] This court allowed Plaintiffs Ballard and Phillips to proceed with a claim for injunctive relief against various Defendants with regard to ETS exposure, in addition to their claims for damages. Neither Ballard or Phillips filed a response to Defendants' motion for summary judgment, and therefore, the motion [DE-106] is ALLOWED as to the claims of Ballard and Phillips.

8

U.S. at 35-36. The subjective component requires proof that the defendants were deliberately indifferent to the plaintiff's exposure of the risk. *Id.* In other words, the plaintiff must demonstrate that prison officials both knew of, and disregarded, a substantial risk to the inmate's health or safety.

The M&R recommends that Simba's claim for ETS exposure be dismissed for failure to cite to any objective evidence demonstrating that he was exposed to excessive ETS at Pender Correctional Institution ("PCI") and cannot establish the objective component of his Eighth Amendment claim. The M&R also notes Simba has not demonstrated that the various Defendants were deliberately indifferent to his exposure to ETS at PCI. Simba, for his part, objects to "each and every finding and recommendation of the Magistrate Judge pertaining to Simba's E.T.S. claim." Obj. to M&R [DE-157] at ¶ 17.

The undisputed facts show that when Simba arrived at PCI, a no-smoking policy was in place which prohibited smoking in the sleeping areas, bathrooms, barber shops, or any type of transfer vehicle. Aff. of Michael T. Bell ¶ 7 [DE-111]. Smoking was permitted in the day rooms, the halls of the dormitories, the shipping and receiving area, and any area outside. *Id.* Defendants aver that each wing at PCI, consisting of a dayroom and sleeping area, is equipped with a ventilation system which runs continuously and is never turned off. *Id.* ¶ 9. According to Defendants, the ventilation system ensures that air inside the dorm is circulated, filtered, and returned back into the dorms. *Id.* During this process, the air is mixed with 15 to 20 % fresh air all the time, providing 2500 to 3000 cubic feet per minute (CFM) of air returned. *Id.* Additionally, the ventilation system is such that smoke in the dayrooms is blown away from the sleeping area, and circulating fans are placed on opposite sides of the dayroom as a further

9

precaution against smoke seeping into the sleeping area. *Id.*

Simba offers his own observations that 95 to 97% of his fellow inmates smoked, and therefore the smoke in the rooms where smoking was permitted, like the dayroom, was intolerable for him. The court notes, however, that there is no constitutional right to a smoke-free stay in prison, *see Helling*, 509 U.S. at 29, and consequently the fact that there are some rooms where smoking is permitted does not establish that Simba was exposed to unreasonable level of ETS. He also complains that discrete violations of the smoking policy resulted in "overwhelming" smoke in sleeping areas, and he voices objections to the efficacy of the ventilation systems at PCI. Simba's arguments regarding the efficacy of the ventilation systems, however, are unsupported by empirical evidence. Moreover, his rendition of the discrete infractions does not establish, objectively, that Simba was exposed to unreasonable levels of ETS, to the extent that would violate "contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* at 35. *Cf. id.* (allowing the plaintiff, on remand, to present evidence of objectively unreasonable levels of ETS where plaintiff alleged that his cellmate smoked five packs a day).

Moreover, even assuming that Simba had proffered evidence sufficient to establish that he was exposed to objectively unreasonable levels of ETS, the court agrees with Judge Webb's finding that Simba cannot prove that Defendants were "deliberately indifferent" to his exposure to ETS. Numerous Defendants averred of their efforts to enforce the non-smoking policy, and after receiving grievances and complaints, PCI eventually instituted a stricter policy and met with staff to ensure its enforcement. Several courts have noted that the existence of a no-smoking policy is strong evidence against a finding of deliberate indifference, even where the policy is

10

imperfectly enforced. *See, e.g., Scott v. District of Columbia*, 139 F.3d 940, 944 (D.C. Cir. 1998). Consequently, the court agrees with the M&R's recommendation that Defendants' motion for summary judgment be allowed as to Plaintiffs' ETS claim.

**E. Conclusion**

After an independent and thorough review of the Magistrate Judge's M & R, all objections thereto, and a *de novo* review of the record, the court concludes that the M & R is, in part, correct and in accordance with the law. Specifically, the court ADOPTS the portion of the M&R recommending that the motions for summary judgment at DE-97, DE-99, and DE-105 be allowed. The court also ADOPTS the portion of the M&R recommending that summary judgment be allowed on Simba's First Amendment claim for denial of access to books based on the use of his committed name. However, to the extent that the First Amendment claim is based on Simba's allegation that his book request was denied because an outside person was paying for the books, the claim is DISMISSED without prejudice so that Simba can exhaust his administrative remedies.

In sum, then, Defendants' motions for summary judgment at DE-97, DE-99, and DE-105 are ALLOWED. Defendants' motion for summary judgment [DE-102] is ALLOWED in part, and to the extent that Simba's claim is based on the use of his committed name, the claim is DISMISSED. To the extent that Simba's First Amendment claim is based on his allegations that his book request was denied because an outside person was paying for the books, the claim is DISMISSED WITHOUT PREJUDICE so that Simba may exhaust his administrative remedies. All other pending motions are DENIED as moot. The Clerk of Court is DIRECTED to close this case.

11

SO ORDERED.

This the 26 day of September, 2007.

                                                        JAMES C. FOX
                                                        Senior United States District Judge